*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JESSE DENNIS EASTERWOOD,

Defendant-Appellant.

UNPUBLISHED
January 15, 2019

No. 339395
Chippewa Circuit Court
LC No. 16-002066-FC

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Jesse Dennis Easterwood, was convicted of three counts of first-degree criminal sexual conduct (multiple variables) (CSC-I), MCL 750.520b, and three counts of accosting a child for an immoral purpose, MCL 750.145a, after a jury trial. The trial court sentenced defendant to concurrent prison terms of 45 to 70 years for each of the CSC-I convictions and 23 months to 4 years for each of the convictions of accosting a child for immoral purposes. On remand from this Court, the trial court granted defendant's motion for resentencing and sentenced defendant to concurrent prison terms of 15 to 40 years for the CSC-I convictions and 23 months to 4 years for each of the convictions of accosting a child for immoral purposes. Defendant appeals as of right. We affirm.

## I. BACKGROUND

Defendant's convictions stem from three separate sexual assaults of the 14-year-old victim, DP, while she was babysitting for defendant's infant daughter in the summer of 2015. According to DP, on each occasion defendant provided her with alcohol before taking her into his bedroom, at least partially undressing her, putting on a condom, and penetrating her vagina with his penis. DP admitted that she did not report the incidents to anyone other than her then-12-year-old friend, CH, who testified that DP told him in October 2015 that she had been raped by defendant. DP first disclosed the details of the three sexual assaults in December 2015 to

Melissa Hagen, a social worker at a youth detention facility where DP was sent after her mother filed an incorrigibility petition.[1] The social worker, as a mandatory reporter of sexual abuse allegations, reported DP's allegations that she had been sexually abused by defendant, who provided her with alcohol when she went to his house to babysit.

Detective Bradley LaCross testified that he interviewed DP at the detention center in January 2016. According to Detective LaCross, DP described three instances when defendant sexually penetrated her vagina with his penis after he offered her beer and cigarettes and after he put on a condom. After further investigation, police arrested defendant in April 2016. Police seized defendant's cell phone and obtained a warrant to search for evidence of the sexual assaults. Police found text messages between defendant and his fiancé in which his fiancé confronted defendant about his purchasing condoms because they did not use condoms in their relationship. Defendant claimed that he purchased the condoms to give to his sons. Defendant's sons, however, denied that defendant offered them condoms in the summer of 2015. Police also found evidence that defendant used his cell phone to visit an Internet pornography site called "Banging the Babysitter."

During trial, the prosecution presented evidence from two other-acts witnesses. TL, the mother of defendant's son, testified that defendant had sexual intercourse with her twice without her consent, when she was 14 years old, and that their son was conceived as a result of one of the sexual assaults. MC, defendant's former stepdaughter, testified that defendant raped her in a tent in their backyard when she was 12 years old. According to MC, on the night of the incident, defendant caught MC trying to sneak out of the house to visit a boyfriend. Defendant told her, "You don't need to do these things with your boyfriend because I'm here. Because I'm available." Defendant then took MC to the tent and had sexual intercourse with her. Afterward, defendant continued to sexually harass MC, often attempting to adjust her bra.

MC further testified that, when she was 17 years old, defendant tried to prevent her from moving out of the house, so she attempted to strike him with a baseball bat. MC pleaded guilty to felonious assault for that incident. The trial judge in this case, who was then a criminal defense attorney, represented MC in her criminal case. MC testified that she did not tell anyone about the sexual assault until shortly before the trial in this case. The implication of MC's testimony was that she did not tell her criminal defense attorney about the sexual assault. At trial, defense counsel orally moved to disqualify the trial judge from the case based on the judge's prior representation of MC in her criminal case. Defense counsel did not timely move to disqualify the trial judge under MCR 2.003(D)(1)(a) and did not file an affidavit at the time he made the oral motion to disqualify the trial judge. The trial judge declined to disqualify himself from the case and defendant did not refer the issue to the chief judge.

Defendant testified and denied the allegations of sexual assault, as well as the allegation that he provided DP with alcohol. Defendant testified that his sexual acts with TL were consensual. Defendant suggested that MC falsely accused him because she was close with her

---

[1] According to DP's mother, DP's behavior changed for the worse after she began babysitting for defendant in July 2015, and DP's mother could not deal with her.

mother, who did not get along with him, and claimed that MC had a history of drug abuse and needed mental counseling. Defendant also suggested that DP was a troubled teen who "made up this claim to get out of trouble."

## II. ANALYSIS

### A. DISQUALIFICATION OF THE TRIAL JUDGE

Defendant first argues that the trial judge's prior representation of MC in her criminal case involving her assault of defendant mandated the trial judge's disqualification from this case under MCR 2.003(C)(1)(b) and (c). We disagree.

Generally, when reviewing a trial court's decision on a motion for disqualification, "the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). Because defendant did not properly preserve this issue, however, we review this issue only for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To obtain relief under this standard, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error was prejudicial in that it affected the outcome of the lower court proceedings. Reversal is warranted only when the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.*

MCR 2.003(C)(1)(b) provides that disqualification of a judge is warranted if

[t]he judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Under MCR 2.003(C)(1)(c), disqualification of a judge is warranted if "[t]he judge has personal knowledge of disputed evidentiary facts concerning the proceeding." Furthermore, Canon 2(A) of the Michigan Code of Judicial Conduct provides:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

Disqualification of a judge under MCR 2.003(C)(1)(b) is focused on the appearance of impropriety and possible due process violations. See *People v Aceval*, 486 Mich 887, 889; 781 NW2d 779 (2010). To determine whether an appearance of impropriety exists, this Court considers " 'whether the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.' " *Id*., quoting *Caperton*, 556 US at 888. In terms of due process, a judge should be disqualified only in those "extreme cases," *People v Roscoe*, 303 Mich App 633,

647; 846 NW2d 402 (2014), in which, objectively viewed, the probability of actual bias on the part of the judge is too high to be constitutionally tolerable, *Caperton*, 556 US at 877.

On appeal, defendant simply declares that the trial judge's prior representation of MC provided grounds for disqualification. Defendant's argument is speculative and lacks specifics; it provides no discussion of why or how the trial judge's prior representation of a witness satisfies any of the grounds cited. At most, defendant asserts there was a "clear indication of bias" because "[t]he jury got to hear that [the trial judge] had represented a key witness against Mr. Easterwood as a defense attorney, a fact which later became important in trial when the witness was asked about prior disclosures she made or did not make to her attorney, now the judge." Again, defendant makes a conclusory statement without citing to the record and without discussing how or why MC's testimony demonstrated bias or impartiality on the part of the trial judge. Defendant fails to note that it was defense counsel who asked MC if an attorney represented her in her criminal case and asked her the identity of her attorney. The prosecutor objected on the ground of relevance when defense counsel asked MC whether the trial judge was an "excellent defense attorney [who] properly counseled her." It was defense counsel who asked MC whether she ever told her attorney about defendant's alleged abuse, and MC responded "no." Not only did defense counsel elicit the testimony that the trial judge was MCs counsel, he also elicited testimony that MC did not make any disclosures to her attorney. There was no evidence that the trial judge had any personal knowledge of disputed evidentiary facts concerning this proceeding. MCR 2.003(C)(1)(c). Defendant has made no showing of actual bias or prejudice, and has not met the heavy burden of overcoming the presumption of impartiality. See *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016). Defendant has failed to establish plain error resulting from the trial judge's prior representation of MC in her criminal case involving her assault of defendant.

Defendant argues, in the alternative, that his trial counsel was ineffective by failing to timely move to disqualify the trial judge and by failing to support such a motion with an affidavit. The right to counsel guaranteed by the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654-655; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594, 548 NW2d 595 (1996). To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

On appeal, defendant simply announced that he was denied the effective assistance of counsel without providing any analysis to support the contention, and left it to this Court to discover and rationalize the basis for the claim. An appellant's failure to address the merits of his assertion of error constitutes abandonment of the issue. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Furthermore, because defendant has not demonstrated that the trial judge erred by refusing to recuse himself, there is no reasonable probability that the outcome in the trial court would have been different had trial counsel timely filed a motion for disqualification with a supporting affidavit. See *Strickland*, 466 US at 687-688. Defendant's argument is without merit.

## B.  SEARCH AND SEIZURE

Defendant next argues that his Fourth Amendment right against unreasonable searches and seizures was violated when the trial court admitted text messages between himself and his fiancée about his condom purchases, as well as evidence that he visited an Internet site called "Banging the Babysitter." Defendant contends that a search of his entire phone fell outside the scope of the search warrant because the warrant limited the evidence sought to be searched for and seized. For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not preserve this issue by seeking suppression of the allegedly tainted evidence in the trial court. Therefore, we review defendant's argument on appeal for plain error affecting his substantial rights. See *Carines*, 460 Mich at 764.

Defendant's argument confuses the place to be searched with the items to be seized. The police obtained a warrant to search defendant's entire phone. The warrant states, "The person, place, or thing to be searched is described as . . . Jesse Easterwood's I phone 4." The warrant specified the items of evidence "to be searched for and seized" as:

> Any and all photos, messages, emails, facebook contacts or messenger messages that are with [DP] or about [DP]. Any information that gives any type of information of Jesse Easterwood's location, work schedule, softball schedule, or need for a babysitter in 2015. Any information about any contact with [DP].

Accordingly, the search warrant authorized the police to search defendant's entire phone for evidence of communications with or about DP, defendant's need for a babysitter, and any type of contact with DP. Defendant's text messages and his Internet browsing history are two areas within defendant's phone where police could likely expect to find the evidence described in the search warrant. See, e.g., *People v Keller*, 479 Mich 467, 479; 739 NW2d 505 (2007) (holding that the authorized search for marijuana "permitted police officers to search the entire house and to investigate containers in which marijuana might be found").

A lawful search of a premises "generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v Ross*, 456 US 798, 820-821; 102 S Ct 2157; 72 L Ed 2d 572 (1982). Similarly, a warrant to search a vehicle "would support a search of every part of the vehicle that might contain the object of the search." *Id*. at 821. "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Id*.

A police officer exceeds the scope of a valid search if the officer takes action unrelated to the objectives of the authorized intrusion, and the officer exposes to view concealed portions of the premises or its contents. See *Arizona v Hicks*, 480 US 321, 324-26, 328; 107 S Ct 1149; 94 L Ed 2d 347 (1987) (holding that an officer's moving of stereo equipment to check the serial number was an unreasonable search under the Fourth Amendment, unsupported by probable

cause, when the initial purpose of the intrusion onto the premises was to search for people or weapons). In determining whether a search exceeded the scope of a warrant, the test is whether the search was unreasonable because only unreasonable searches are prohibited by the Fourth Amendment.

Here, the police acted reasonably within the scope of the search warrant for the cell phone when they searched the Internet history, at least cursorily, because the Internet history could reasonably be expected to contain information sought to be seized. Thus, the police were lawfully present in the area being searched. Even if it could be argued that the warrant did not expressly authorize the seizure of evidence discovered in the Internet search history, the seizure of the evidence falls within the plain-view exception to the warrant requirement. See *Coolidge v New Hampshire*, 403 US 443, 465; 912 S Ct 2022; 29 L Ed 2d 564 (1971). When officers are legally present in the area being searched, they are authorized to seize any evidence obviously incriminating, under the plain-view doctrine. See *Horton v California*, 496 US 128, 136-137; 110 S Ct 2301; 110 L Ed 2d 112 (1990). Because DP testified that defendant used condoms during the sexual assaults, and because defendant denied having or using condoms, evidence regarding defendant's purchase of condoms was clearly incriminating, as was defendant's visit to a website involving sexual acts with babysitters. On this record, the admission of such evidence did not amount to plain error. Furthermore, because the seizure of the evidence was not outside the scope of the search warrant, we reject defendant's alternative argument that his trial counsel was ineffective because he failed to file a motion to suppress the evidence. There is no reasonable probability that the outcome in the trial court would have been different had trial counsel filed a motion to suppress the evidence. See *Strickland*, 466 US at 687-688.

## C. HEARSAY TESTIMONY

Defendant next argues that he was denied a fair trial by the admission of hearsay testimony regarding DP's statements to Hagen and to Detective LaCross because the testimony was offered for the sole purpose of bolstering DP's credibility. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected to the admission of Hagen's testimony with respect to what DP told her, on the ground that the testimony was hearsay, yet the trial court admitted the testimony over defendant's objection under the hearsay exception in MRE 801(d)(1)(B). In cases of preserved evidentiary challenges, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Aldrich*, 246 Mich App at 113. "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). Defendant did not, however, object to the admission of Detective LaCross's testimony with respect to what DP told him. This Court reviews unpreserved evidentiary issues for plain error. *Carines*, 460 Mich at 763.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A statement is excluded from the definition of hearsay if the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge

against the declarant of recent fabrication or improper influence or motive." MRE 801(d)(1). The party offering the prior consistent statement under MRE 801(d)(1)(B) must establish four elements:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citation omitted).]

## 1. HAGEN'S TESTIMONY

The parties agree that Hagen's testimony regarding DP's statement to her that she had been sexually assaulted by defendant when she babysat for his child and that defendant provided her alcohol on those occasions was not admissible as a prior consistent statement because the statement was not made prior to the alleged motive to fabricate arose. The erroneous admission of evidence is, however, presumed harmless and reversal of a conviction based on erroneously admitted evidence will not be granted unless, "after an examination of the entire cause, it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted). That is, unless the defendant is able to show that it is more probable than not that the error was outcome determinative, this Court will not reverse. *Id.* at 495-496. "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the verdict." *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000) (citation omitted).

Hagen's testimony that DP told her that she had been sexually abused by defendant did not provide details of the assaults as described by DP. Hagen's testimony simply identified defendant as the perpetrator of the assaults. Hagen's testimony identifying defendant as her abuser was therefore cumulative of similar testimony by DP and CH. "Although whether a hearsay statement is cumulative is not dispositive to this analysis under Michigan law, it is an indicator that the error was not highly prejudicial, particularly in the presence of other corroborating evidence." *People v Gursky*, 486 Mich 596, 623; 786 NW2d 579 (2010). As in *Gursky*, the improperly admitted portions of Hagen's testimony in this case did not introduce any new information to the jury. Instead, Hagen's testimony was cumulative to DP's in-court testimony that DP had been assaulted and to CH's testimony that DP told him that she had been raped by defendant. See *id*. The erroneous admission of this cumulative hearsay testimony did not prejudice defendant. See *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

## 2. DETECTIVE LACROSS'S TESTIMONY

Defendant did not object to Detective LaCross's testimony and, therefore, the trial court made no ruling on the admissibility of the testimony.

We assume, without deciding, that Detective LaCross's testimony regarding out-of-court statements made to him by DP, including detailed descriptions of the alleged abuse, was inadmissible hearsay under MRE 801(d)(1)(B). The admission of the evidence was not highly prejudicial to defendant because it was cumulative to DP's in-court testimony and CH's testimony, as well as to other corroborating evidence. Similarly, defense counsel's failure to object to the testimony did not prejudice the defense, and therefore defendant cannot show ineffective assistance of counsel.

## D. SENTENCING

In his first appeal, defendant challenged the trial court's original assessment of points for Offense Variables (OVs) 13 and 19. On remand from this Court, the trial court granted defendant's motion for resentencing. The trial court agreed with defendant that OV 13 was improperly assessed 50 points and should have been assessed 25 points. The trial court then recalculated the guidelines range to a range more favorable than that urged in defendant's brief on appeal in this Court. The trial court sentenced defendant within the applicable sentencing guidelines range to a minimum term of 15 years, down from the 45-year minimum term originally imposed. In his supplemental brief after remand, defendant did not challenge the sentence imposed by the trial court on remand. Under these circumstances, further review of this issue is unnecessary.

Affirmed.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

-8-