*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
August 29, 2024

v

DENNIS PATRICK BRINGARD,

Defendant-Appellant.

No. 363480
Cheboygan Circuit Court
LC No. 2021-006092-FC

Before: O'BRIEN, P.J., and CAVANAGH and SHAPIRO*, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent and would remand for a *Ginther*[1] hearing on several aspects of the choices made by defendant's trial counsel.[2]

First, trial counsel failed to object to multiple hearsay statements introduced to corroborate the complainant's accusation in what was a pure credibility contest. Defendant is accused of two sexual assaults against ET, his step-grandchild. The assaults were alleged to have occurred five

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] A trial court's decision whether to grant an evidentiary hearing, such as a *Ginther* hearing, is reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 217. In Michigan, a *Ginther* hearing is a method by which "[a] defendant who wishes to advance claims that depend on matters not of record can . . . seek at the trial court level an evidentiary hearing for the purpose of establishing his claims . . . ." *Ginther*, 390 Mich at 443-444. A *Ginther* hearing is not warranted when the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

years before trial, when ET was 7 years old, but the accusation was not made at that time. ET explained during her testimony that about a year after she was allegedly assaulted by defendant, there was an incident in which her older brother exposed his penis to her, and it "reminded [her] of what [defendant] had done."[3] There was no physical evidence of any sexual trauma, ostensibly because of the amount of time that had passed. And when a forensic interview of ET was attempted, she was unable to make any statements. Thus, the only evidence of the crime was the complainant's testimony.[4]

Defendant denied that the assaults occurred, and given the absence of any evidence other than ET's statements to support the charges, the jury was plainly presented with a credibility contest between ET and defendant. In that context, the prosecution introduced hearsay evidence—without objection—recounting or describing statements made by ET and her parents such that the jury heard the prosecution's version of events repeated multiple times during the trial through the use of hearsay.[5] And the hearsay statements were not merely recounted during testimony; two statements that were in written form were admitted as exhibits and provided to the jury at the outset of deliberations.

In her testimony, ET's mother recounted a statement made by ET describing the alleged assaults. Because ET was under 10 years old at the time she made the statement, it was her first statement describing the assaults to another person, and because it was made spontaneously, the statement satisfied some of the criteria for admissibility under MRE 803A.[6] But MRE 803A(3) also requires that "either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance[.]" As noted earlier, ET's statement made to her mother was not made immediately after the incidents; rather, it was made approximately a year after the alleged assaults. And I cannot conclude that ET's testimony provided a basis to find that the delay was excusable as having been caused by

---

[3] According to Kristin Glentz, ET's school counselor, ET "had a triggering event that . . . propelled this to [the] forefront of her memory," and in counseling, ET "start[ed] to piece together some pieces of [the] story."

[4] Complainant could not recall when the alleged assaults occurred or even the season, but she testified that it was approximately a year before she made a statement to her mother about the assaults.

[5] While a prior statement may be admitted to rebut a charge that the declarant fabricated the statement, the rule only applies to statements made before there was any motive to fabricate, i.e. after the initial accusation is made. "[A] consistent statement made after the motive to fabricate arose does not fall within the parameters of the hearsay exclusion for prior consistent statements." *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

[6] The Michigan Rules of Evidence underwent sweeping stylistic changes by amendment on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10; 512 Mich lxiii (2023). The trial in this case took place in July 2022; therefore, I will cite the prior version of the evidentiary rule, although substantively the differences are inconsequential.

fear or some equally effective circumstance. Complainant testified that defendant made no threats, nor did he warn or direct her not to tell anyone about what happened. Instead, the delay was due to a lack of recall or some other reason until the incident involving her brother occurred. She did testify that once having revealed what happened that she was generally afraid of males for fear that any male might abuse her, but she did not describe this fear as having been a cause of the delay. I am unaware of any cases that have held that a failure of memory regarding an event followed by a later claimed recollection of the event constitutes an "other equally effective circumstance." It would therefore appear that trial counsel should have objected and that his failure to do so amounted to deficient performance. See *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000) (an attorney's performance is deficient if the representation falls below an objective standard of reasonableness). Minimally, counsel should be required to explain his failure to object at a *Ginther* hearing.

Even assuming complainant's statement to her mother was properly admitted, the repeated introduction of other hearsay statements was plainly in error as MRE 803A(b) only permits the first corroborative statement to be admissible when there are multiple corroborative statements made by the child declarant.[7] Despite this limitation, trial counsel made no objection to the introduction of later hearsay statements that came in the form of both testimony and writings admitted as exhibits. Trial counsel failed to object to the admission of a typed statement prepared by ET's father recounting what ET and her mother told him about the alleged assaults. Counsel also failed to object to the admission of a typed statement prepared by school counselor Glentz setting forth statements made to her by ET.

The prosecution responds that trial counsel's decision to allow the hearsay to be admitted was strategic because counsel used the hearsay statements in an attempt to show that ET's story had changed or evolved over time. But the differences in the statements were modest. The only significant difference arose in her trial testimony when she stated for the first time that she was penetrated anally rather than vaginally as her prior statements had described.[8] This discrepancy, however, could have been demonstrated without the employment of any hearsay statements beyond the initial statement to her mother in which ET described vaginal penetration. Thus, the question whether trial counsel's strategy to permit the admission of multiple corroborative hearsay statements was a reasonable one should be considered on remand. See *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (a court cannot insulate the review of an attorney's performance by simply characterizing it as "trial strategy;" rather, a court must assess whether strategic choices were made after less than complete consideration or investigation).

Second, defendant makes a credible claim that trial counsel's decision not to call an expert in child forensic interviewing constituted ineffective assistance. There was ample material for

---

[7] Defendant's brief raises the hearsay issue in the context of his argument that the trial court erred by refusing to hold a *Ginther* hearing.

[8] ET testified that the initial assault occurred while she was laying on her side on the couch and defendant was on his side behind her. Though her statements all referred to vaginal penetration, she explained in her testimony that given that positioning, she ultimately concluded that it must have been anal penetration.

-3-

such an expert to discuss, including the lack of any statement during the forensic interview and the reliance by the interviewer instead on a statement prepared in a non-forensic setting and written by a counselor who did not follow forensic interviewing protocols.

Third, I am unable to understand why defendant's trial counsel repeatedly and consistently referred to the complainant as the "victim" throughout the trial. This was not a case in which a crime was definitively known to have been committed, with the only question being whether the defendant was the perpetrator of the crime. In such a case, there is no dispute that the complainant would be a "victim." But here, the defense was that no crime occurred. I find it difficult to believe that a jury would not be influenced by the fact that even defendant's own attorney repeatedly referred to the complainant as a victim of the charged crime. I concede that this error was not raised on appeal, but I would nevertheless include it as a matter to be considered on remand given the magnitude of the potential prejudice to defendant.[9]

The prosecution argues that any errors by counsel were harmless.[10] But as noted above, there was no physical evidence, and the forensic interview yielded no statements or accusations. In addition, ET testified that her cousin was in the room when the first alleged assault occurred. More specifically, ET claimed that her cousin was on a couch only two or three feet away from the couch on which she and defendant were on. The cousin, however, testified that during the alleged assault he did not witness anything untoward. He did not see defendant and ET under a blanket together and did not see anything that suggested that defendant was penetrating ET or otherwise committing a sexual assault. In sum, I conclude that if trial counsel's performance was deficient, defendant would be prejudiced because there would exist a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Accordingly, I conclude that the trial court abused its discretion by denying defendant's motion for a *Ginther* hearing; therefore, I would remand the case for a *Ginther* hearing and retain jurisdiction.

/s/ Douglas B. Shapiro

---

[9] MCL 750.520a(s) defines a "victim" as the "person alleging to have been subjected to criminal sexual conduct," however it has never been construed so as to require the defense to so refer to an accuser during a trial. The definition was intended to apply to the substantive statutes in the statutory chapter that use the word "victim" when defining the crime. There is no basis to conclude it was intended to require the use of that term at trial. Indeed, such a requirement would certainly violate the presumption of innocence and raise other due process concerns such as the right against self-incrimination and the right to effective assistance of counsel.

[10] Notably, when defendant moved in the trial court for a *Ginther* hearing, the prosecution agreed that one should be held.